**In the United States District Court
for the District of Kansas**

———————

Case No. 20-cr-40087-2-TC

———————

UNITED STATES,

*Plaintiff*

v.

DANTE PEPPERS,

*Defendant*

———————

**MEMORANDUM AND ORDER**

The Government charged Defendant Dante Peppers with four federal criminal counts related to drug distribution. Doc. 58. Following a trial, the jury found Peppers guilty of one count of conspiracy to possess with the intent to distribute methamphetamine and one count of use of a communication facility to facilitate that conspiracy, but it acquitted him of both counts of possession with the intent to distribute a controlled substance. Doc. 169 at 1–2. Peppers now moves for acquittal, Doc. 171, and reconsideration of detention, Doc. 173. For the following reasons, both motions are denied.

**I**

**A**

**1.** "A defendant may move for a judgment of acquittal . . . within 14 days after a guilty verdict." Fed. R. Crim. P. 29(c)(1). If the defendant challenges the sufficiency of the evidence, all direct and circumstantial evidence admitted at trial, along with "reasonable inferences to be drawn from that evidence," are considered "in the light most favorable to the government." *United States v. Wyatt*, 964 F.3d 947, 952 (10th Cir. 2020) (quoting *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013)). Conflicting evidence should not be weighed, nor witness credibility considered, "as these duties are dele-

gated exclusively to the jury." *United States v. Coulter*, 57 F.4th 1168, 1179 (10th Cir. 2023) (quoting *United States v. Evans*, 318 F.3d 1011, 1018 (10th Cir. 2003)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). And although substantial evidence must support the verdict, "it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *Wyatt*, 964 F.3d at 952 (quoting *Rufai*, 732 F.3d at 1188).

**2.** A defendant subject to detention under 18 U.S.C. § 3143(a)(2) may be ordered released until sentencing if he is not a flight risk, he is not a danger to anyone else or the community, and there are "exceptional reasons" why detention would be inappropriate. 18 U.S.C. § 3145(c); *see also United States v. Jones*, 979 F.2d 804, 805 (10th Cir. 1992) (permitting district courts to consider exceptional reasons even though section 3145(c) appears to be directed to appellate courts). Section 3143(a)(2) requires detention of any person pending sentencing for certain offenses, including violations of the Controlled Substances Act punishable by imprisonment for ten years or more. 18 U.S.C. § 3142(f)(C).

**B**

In November 2021, a grand jury returned a superseding indictment against Peppers. Doc. 58. It included five counts: one count of controlled substance conspiracy in violation of 21 U.S.C. § 846, two counts of using a communication facility to facilitate a controlled substance offense in violation of 21 U.S.C. § 843(b), and two counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). Doc. 58 at 1–3. The Superseding Indictment identified Peppers' two codefendants, Tyrone Millsap and Lori Hause, as his coconspirators. All of the criminal activity was alleged to have occurred in July or August 2020. *Id.*

The parties tried their case to a jury, where the following facts were established when viewing the evidence in the light most favorable to the Government. Millsap contacted Peppers over Facebook Messenger to propose an arrangement wherein Peppers would supply Millsap with methamphetamine and Millsap would sell it. Peppers told Millsap he had a supply and requested Millsap's phone number. Over the following three weeks, the Government conducted two

controlled buys with a confidential informant that were witnessed by several officers. During both buys, Millsap met the informant in the informant's car and made a telephone call to an unknown person. Several minutes after the call, Millsap met the driver of a black Chevrolet Impala and returned to the informant's car with methamphetamine, which he sold to the informant. After the second buy, officers followed the Impala away from the scene and conducted a traffic stop, during which they discovered Peppers driving the car.

As to the four counts submitted,[1] the jury rendered a split verdict. It found Peppers guilty of the controlled substance conspiracy (Count 1) and use of a communication facility to facilitate a controlled substance offense (Count 2), but it found him not guilty of either count of distributing a controlled substance (Counts 3 and 4). Doc. 169 at 1–3. Peppers orally moved for release pending sentencing under 18 U.S.C. § 3145(c), but that motion was denied. Peppers was remanded to custody to await sentencing where he remains. Doc. 164 at 3.

Peppers has filed two motions that are at issue. First, he moved for judgment of acquittal. Doc. 171. Second, he moved to reconsider the detention order. Doc. 173. The Government opposed both motions. Docs. 174 & 175.

## II

Peppers' two motions are denied. He is not entitled to a judgment of acquittal because the evidence, taken in the light most favorable to the Government and with reasonable inferences drawn from that evidence, supports the jury's verdict. And, with regard to the detention issue, his motion is denied because he has not adequately shown that he is unlikely to flee or be a danger to the community in light of his conviction or that exceptional reasons justify his release.

### A

Peppers' motion for judgment of acquittal is based on his belief that the guilty verdict on Counts 1 and 2 of the Superseding Indict-

---

[1] The Government dismissed one of the charges related to using a communication facility prior to trial. Doc. 147.

3

ment were not supported by sufficient evidence.[2] As discussed below, Peppers's motion is denied.

**1.** The first count of the Superseding Indictment charged Peppers with conspiracy to possess with intent to distribute or to distribute mixtures and substances containing a detectable quantity of methamphetamine under 21 U.S.C. § 846, with reference to 21 U.S.C. §§ 841(a)(1), (b)(1)(c). Doc. 58 at 1–2. Peppers challenges the sufficiency of the evidence as to the first and fourth elements of the conspiracy charge: agreement and interdependence. Doc. 171 at 4. He also argues the verdict should be reversed for inconsistency because he was found innocent of the substantive drug offenses but convicted of conspiracy to commit those offenses. *Id.* at 6–7.

**a.** Peppers first claims there is no evidence he reached an agreement with either of his alleged coconspirators, Tyrone Millsap and Lori Hause. Doc. 171 at 5. He claims the Facebook Messenger exchange is the only evidence of communication between him and Millsap, and that exchange ended without an agreement being reached. *Id.* He further claims there is no evidence of any communication between him and Hause nor any circumstantial evidence that any agreement was reached at all. *Id.*

The first element of the conspiracy charge required the Government to prove that "two or more persons agreed to violate the federal drug laws, specifically: (a) to possess with the intent to distribute mixtures or substances containing a detectable quantity of methamphetamine; and/or (b) to distribute mixtures or substances containing a detectable quantity of methamphetamine." Doc. 158 at 4–5 (Jury Instruction No. 3); *see also* Tenth Circuit Criminal Pattern Jury Instructions § 2.87 (2021); *United States v. Leal*, 32 F.4th 888, 891 (10th Cir. 2022). Evidence of an agreement "need not be explicit, but rather may be inferred from the facts and circumstances of the case. An agreement to distribute drugs can sometimes rationally be inferred from frequent contacts among the defendants and from their joint appearances at transactions and negotiations." *United States v. Cushing*,

---

[2] Peppers also claims the Court erred in several respects that do not form the basis of his acquittal motion. Doc. 171 at 5 n.2 & at 6 n.3. These contentions will not be addressed in this Memorandum and Order because Peppers does not suggest that these alleged errors, either individually or together, require an order of acquittal.

10 F.4th 1055, 1065 (10th Cir. 2021) (quoting *United States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992)). Such an agreement "may be express or implied" and "may be inferred entirely from circumstantial evidence." *United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009) (quoting *United States v. Whitney*, 229 F.3d 1296, 1301 (10th Cir. 2000)). On the other hand, "[m]ere association, casual transactions, and a solely buyer-seller relationship between the defendant and member of the conspiracy" is insufficient to find an agreement to participate in a conspiracy. *Cushing*, 10 F.4th at 1065. The evidence in support of a conspiracy agreement must be "of such a character that the minds of reasonable men may conclude therefrom that an unlawful agreement exists." *Wardell*, 591 F.3d at 1288 (quoting *United States v. Dazey*, 403 F.3d 1147, 1159 (10th Cir. 2005)).

Drawing reasonable inferences from the evidence in the Government's favor, a reasonable jury could find the evidence the Government presented proved beyond a reasonable doubt that Peppers agreed to violate federal drug laws. The Facebook Messenger exchange shows more than a failed attempt by Millsap to recruit Peppers into a drug distribution scheme. *Contra* Doc. 171 at 5. While it may be true that there is no direct evidence that Peppers and Millsap agreed to distribute methamphetamine, circumstantial evidence of an agreement is sufficient to sustain a conviction. *Wardell*, 591 F.3d at 1287. And the Facebook Messenger conversation—with Landry's expert testimony as a guide—reveals that Peppers and Millsap discussed prices and opportunities to sell methamphetamine. Peppers said he had supply and Millsap said he had demand. Peppers told Millsap to notify him if an opportunity arose, and shortly thereafter, Millsap told Peppers to come pick him up. The exchange did not end with a flat rejection, but with Peppers requesting and receiving Millsap's phone number.

Evidence beyond the Facebook Messenger exchange also bolsters the conclusion that Peppers and Millsap reached an agreement to sell methamphetamine. *Contra* Doc. 171 at 5. Multiple law enforcement officers witnessed two controlled buys that were conducted with the aid of a confidential informant. Those officers testified that a black passenger vehicle was present at both transactions and Millsap, at the second controlled buy, entered what was later identified as a black Impala. Law enforcement officers followed the black Impala away from the second buy, ultimately stopping the vehicle and discovering Peppers behind the wheel. The jury watched video footage of that

traffic stop, which showed the car and its occupants, and it could reasonably conclude that Peppers had agreed to supply Millsap with methamphetamine during that second controlled buy.

Regarding the first buy, another officer testified he had seen the same black Impala during the first buy and watched a man exit the driver's seat and handed methamphetamine to Millsap to sell to the informant. The officer testified the driver was a black male and there was a white woman in the passenger seat. Although the officer described the man as much heavier than Peppers, he also claimed his view was obstructed and the man may have been wearing clothes that made his weight difficult to determine. A reasonable jury could have concluded based on the evidence presented that Peppers drove the Impala during both buys and handed the methamphetamine to Millsap.

Furthermore, Millsap and Hause both called a phone number when conducting a drug exchange, and Peppers called the same phone number within the same time period. And when Landry interviewed him, Peppers did not dispute that he had recently sold methamphetamine. Instead, Peppers implied he might cooperate with the investigation if the investigators offered him enough, but told Landry he could face repercussions for doing so. A jury could interpret Peppers's statements as implicit admissions that he had agreed with Millsap to sell methamphetamine.

Peppers argues the doctrine of collateral estoppel bars the Government from relying on evidence used in support of the counts on which he was acquitted "because the evidence was essentially the same for all charged counts." Doc. 171 at 5–6. But the doctrine of collateral estoppel in criminal cases stems from the Fifth Amendment's guarantee against double jeopardy, which does not apply to multiple charges in a single case. *Ashe v. Swenson*, 397 U.S. 436, 443–46 (1970). Indeed, the Supreme Court has noted that collateral estoppel only bars relitigation of the same facts "between the same parties in any *future* lawsuit." *Id.* (emphasis added). Acquittal on one count of an indictment does not prevent a jury from entering a guilty verdict on a different count of the same indictment based on the same facts. *See United States v. Powell*, 469 U.S. 57, 67–68 (1984) (holding that acquittal on a predicate offense does not require a finding of insufficient evidence on a compound felony). So Peppers's acquittal on Counts 3 and 4 of the Superseding Indictment has no bearing on

the sufficiency of the evidence for Counts 1 and 2, especially given the light in which the evidence must be weighed.

**b.** Peppers next claims the evidence is insufficient to show interdependence between himself and Millsap or Hause and "suggests nothing beyond [his] alleged involvement in two small scale drug sales." Doc. 180 at 4. The fourth element of the conspiracy charge required the Government to prove that there was interdependence among the members of the conspiracy. Doc. 158 at 4–5 (Jury Instruction No. 3).

A defendant and a coconspirator are interdependent if both of them "intended to act together for their shared mutual benefit within the scope of the conspiracy charged." *United States v. Cushing*, 10 F.4th 1055, 1065 (10th Cir. 2021) (quoting *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992)). Interdependence exists if the defendant's actions "facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole." *United States v. Davis*, 995 F.3d 1161, 1166 (10th Cir. 2021) (quoting *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1124 (10th Cir. 2011)). Each coconspirator's activities must have "constituted essential and integral steps toward the realization of a common, illicit goal." *Cushing*, 10 F.4th at 1065 (quoting *United States v. Edwards*, 69 F.3d 419, 431 (10th Cir. 1995). As with agreement, "circumstantial evidence alone" may support a finding of interdependence, and "a single act can be sufficient to demonstrate interdependence." *United States v. Pickel*, 863 F.3d 1240, 1253 (10th Cir. 2017) (quoting *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009)).

Drawing all reasonable inferences from the evidence in the Government's favor, a reasonable jury could find that Peppers and Millsap were interdependent. The Facebook Messenger exchange suggests a scheme in which each party's action would be an integral step toward distributing methamphetamine for shared profit. Millsap told Peppers he had people willing to buy drugs but needed a supply, and Peppers said he had a supply. So all that appeared to remain was a discussion of price. During both controlled buys, Millsap left the informant's car and met a black car, after which he returned to sell methamphetamine to the informant. In both cases, lab testing revealed the substance Millsap sold to the informant included pure methamphetamine. And in both cases, a reasonable jury could conclude both that Peppers was inside the black car and that he was the one who provided methamphetamine to Millsap.

The video footage of the traffic stop after the second controlled buy strongly supports these conclusions because it reveals Peppers was driving the black car on that occasion. Moreover, the informant paid Millsap $800 for an ounce of methamphetamine during the first controlled buy, which is the same price Millsap and Peppers had discussed over Facebook Messenger. During the second buy, the informant paid Millsap $850 per ounce because Millsap claimed he had not made any money during the first buy, which is once again consistent with the details he and Peppers had discussed during their Facebook Messenger exchange. A jury could reasonably interpret this circumstantial evidence as proof that Peppers "intended to act together" with Millsap "for their shared mutual benefit" by providing him methamphetamine to sell to the informant. *Cushing*, 10 F.4th at 1065.

**c.** Peppers also briefly argues he should be acquitted because the verdicts between the various counts of the Superseding Indictment are inconsistent. Doc. 171 at 7. He claims, "it is a nonsensical result that the jury found an agreement between Mr. Peppers and Mr. Millsap to distribute methamphetamine in Count 1 while also concluding that Mr. Peppers did not [aid and abet Millsap] during the only two transactions made by Mr. Millsap on July 13 (Count 3) and July 27 (Count 4)." *Id.* But even if the verdict is inconsistent, "[t]he most that can be said . . . [is] that either in the acquittal or in the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *United States v. Powell*, 469 U.S. 57, 64–65 (1984) (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932)). It is unclear if the jury really thought Peppers was innocent but convicted him anyway, or if it was convinced of Peppers's guilt but nevertheless acquitted him on the possession counts. Regardless, acquittal on substantive counts of an indictment "does not weigh in [an] independent review of the sufficiency of the evidence" on a conspiracy count. *United States v. Morehead*, 959 F.2d 1489, 1501–1504 (10th Cir. 1992) (applying *Powell* in a conspiracy context); *see also United States v. McCullough*, 457 F.3d 1150, 1161 n.2 (10th Cir. 2006) (citing *Powell* and holding that a verdict need not be consistent to convict a defendant of a compound offense). Peppers may not challenge his conviction on that basis. *Id.*

**2.** Peppers also asserts the evidence was insufficient to support a guilty verdict on Count 2, using a communication facility, Facebook Messenger, to facilitate the aforementioned conspiracy offense in vio-

8

lation of 21 U.S.C. § 843(b). Doc. 171 at 3–4. Peppers's only argument for acquittal on the communication facility count is that "the government failed to show that Mr. Peppers actually conspired or reached agreement with Tyrone Millsap and Lori Hause, as charged in Count 1." *Id.* at 4.

This count required the Government to prove, among other things, that Peppers committed the underlying drug felony. United *States v. Acosta-Gallardo*, 656 F.3d 1109, 1121–22 (10th Cir. 2011). And conspiracy to violate drug laws may be a predicate drug felony for a communication facility offense. *United States v. Pickel*, 863 F.3d 1240, 1257 (10th Cir. 2017) (citing *Acosta-Gallardo*, 656 F.3d at 1122).

As detailed above, the jury's guilty verdict on the conspiracy count was supported by substantial evidence. The Government adequately showed a conspiracy existed between at least Peppers and Millsap. That controlled substance conspiracy is a valid predicate drug felony for the communications facility offense. And as Peppers has not challenged any other element of his conviction on Count 2, his motion for acquittal on that count is denied.

**B**

Peppers also moves for reconsideration of his detention. Doc. 173. His conviction of conspiracy to possess with the intent to distribute methamphetamine carries a maximum sentence of 20 years' imprisonment. 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846. He is therefore required to be detained pending sentencing, subject to narrow exceptions. 18 U.S.C. §§ 3143(a)(2), 3142(f)(1)(C).

Peppers relies on 18 U.S.C. § 3145(c) to justify his release pending sentencing. Under that statute, he may obtain presentencing release if he can show by clear and convincing evidence that he "is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). Peppers must also show "that there are exceptional reasons why [his] detention would not be appropriate." *Id.* § 3145(c).

Peppers's motion is denied because he has failed to adequately meet any of the three factors. First, he has not adequately shown he is unlikely to flee or be a danger to the community. He claims his "performance on pretrial release, voluntary presence at trial, and record of employment, as well as the other factors identified in

§ 3142(g), fully support" a finding that he is unlikely to flee before sentencing. Doc. 173 at 3. But as stated when ruling on Peppers's oral motion for pretrial release, his conviction on two counts of the Superseding Indictment, one of which has a maximum sentence of twenty years' imprisonment, significantly altered the status quo and gives Peppers significant incentive to flee. Neither in person nor in his current motion has Peppers provided strong evidence that weighs against the likelihood of flight before sentencing.

Similarly, Peppers has not adequately shown that he is unlikely to pose a danger to the community. Physical danger is not the only factor to consider: "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community." *United States v. Portillo-Camargo*, No. 22-1244, 2022 WL 5434556, at *4 (10th Cir. Oct. 7, 2022) (quoting *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)). Peppers has been convicted of conspiracy to distribute methamphetamine, and he was arrested for that offense while he was on supervised release for a previous offense. *See* Petition for Warrant or Summons for Offender Under Supervision at 1, *United States v. Peppers*, No. 15-40068 (D. Kan. Sep. 29, 2021), Doc. 63. Peppers also possessed marijuana during that same supervised release, *id.* at 2, and he has previously been convicted of possessing with intent to distribute hallucinogenic drugs in violation of Kansas law. Indictment at 1, *United States v. Peppers*, No. 15-40068 (D. Kan. Jul. 29, 2015), Doc. 1. There is a strong likelihood that Peppers will again violate the terms of his release, which would pose a danger to others and to the community. Peppers has presented no convincing evidence to the contrary, so he may not obtain presentencing release.

Nor has Peppers established that exceptional reasons are present that would warrant his relief. He argues that the detention facility where he is being housed while awaiting trial placed him in quarantine upon his arrival, limited his time out of his cell, did not provide clean clothes to wear, and failed to provide him with thermal clothing. Doc. 173 at 2. While these conditions are bleak, Peppers has not established that they are sufficient to constitute an "exceptional" basis to disturb the detention order. *See id.* (failing to cite authority suggesting the conditions were sufficiently serious to warrant release pending sentencing). Indeed, as the Government noted, it is not entirely clear whether efforts to address these concerns could be addressed with the detention authorities. Doc. 175 at 10.

### III

For the reasons set forth above, Peppers's motion for judgment of acquittal, Doc. 171, and motion to reconsider detention order, Doc. 173, are DENIED.

It is so ordered.

Date: February 27, 2023         s/ Toby Crouse
                                Toby Crouse
                                United States District Judge